UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESTER KENJI RILEY,<br><br>                              Petitioner,<br><br>v.<br><br>LANDON BIRD,<br><br>                              Respondent. | Case No.:  21cv1805-TWR(LR)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING FOURTH AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 17]** |

This Report and Recommendation is submitted to the Honorable Todd W. Robinson, United States District Judge, pursuant to 28 U.S.C. § 636 (b)(1) and Civil Local Rules 72.1(d) of the United States District Court for the Southern District of California.  On October 21, 2021, Petitioner Lester Kenji Riley, a state prisoner proceeding *pro se*, commenced these habeas corpus proceedings pursuant to 28 U.S.C. § 2254 by filing a Petition for Writ of Habeas Corpus ("Petition").  (ECF No. 1.)  After several amendments, on March 24, 2022, Petitioner filed his Fourth Amended Petition for Writ of Habeas Corpus ("Fourth Amended Petition"), the operative pleading in this case. (ECF No. 17 ("FAP"); <u>see also</u> ECF Nos. 10 & 15.)  Respondent filed an Answer to

Plaintiff's Fourth Amended Petition, and Petitioner filed a Traverse and an Amended Traverse.  (See ECF Nos. 23, 51, 56, 58.)

This Court has considered the Fourth Amended Petition, Answer, Traverse, Amended Traverse, and all supporting documents filed by the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Petitioner's Fourth Amended Petition for Writ of Habeas Corpus be **DENIED**.

## I. FACTUAL BACKGROUND

The following facts are taken from the California Court of Appeal's opinion in People v. Riley, Appeal No. D077512.  (See Lodgment 8.)  This Court presumes the state court's factual determinations to be correct, absent clear and convincing evidence to the contrary.  See 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

> 75-year-old S.H. was on an evening walk with his adult daughter and her two young children.  As the family waited at a crosswalk to cross the street, Riley approached them with a steak knife in his hand.  Riley made eye contact with S.H. and, without saying a word, rushed at S.H. and started stabbing him.  Neither men knew each other.  As S.H. tried to back away, he tripped over a rock and fell on his back.  Riley continued stabbing S.H.  When a witness across the street yelled at Riley—"Hey, what are you doing?"—Riley stopped and fled.  Riley never said a word during the attack.
> Police responded within minutes and quickly located Riley about a block away from the crime scene, still holding the knife.  He eventually complied with police commands to drop the knife but refused to get on the ground.  The police fired a beanbag round and tased Riley to make him comply.  As he was being arrested, Riley made "mostly nonsensical" statements to the officers.  Concerned he may be suicidal, the officers transported Riley for a mental health evaluation.  Blood drawn from Riley did not detect alcohol or drugs in his system.
> Riley stabbed S.H. at least five times, including once in the face above his eye, twice in his upper chest, and twice in his left arm.  At the hospital, S.H. received stitches, but he did not need surgery and he went home the same day.

(Lodgment 8 at 2–3 (footnote omitted).)

/ / /

/ / /

## II.  PROCEDURAL BACKGROUND

### A.  Petitioner's Criminal Conviction and Direct Appeal

On December 12, 2019, a jury convicted Petitioner of attempted murder (California Penal Code sections 187(a) and 664), assault with a deadly weapon (California Penal Code section 245(a)(1)), and two misdemeanor counts of cruelty to a child (California Penal Code section 273a(b)).  (See Lodgment 1 at 70–73, 156.)  With respect to the attempted murder and assault charges, the jury also found true the allegations that Petitioner inflicted great bodily injury upon an elderly person (California Penal Code section 12022.7(c)) and personally used a knife (California Penal Code section 12022(b)(1)).  (Id. at 70–71, 156.)  On February 13, 2020, Petitioner was sentenced to fifteen years in state prison.  (See Lodgment 1 at 158–59; see also Lodgment 8 at 3.)

Petitioner appealed his conviction to the California Court of Appeal, arguing that (1) the trial court erred in finding that he was competent to stand trial and in failing to order a second competency hearing at the time of sentencing, and (2) there was insufficient evidence to support his attempted murder conviction.  (Lodgment 5.)  On May 27, 2021, the California Court of Appeal found that (1) substantial evidence supported the trial court's initial determination that Petitioner was competent to stand trial, and that the trial court did not abuse its discretion by not suspending criminal proceedings at the time of sentencing to conduct a second competency evaluation, and (2) substantial evidence supported the jury's finding that Petitioner had the specific intent to kill to support his attempted murder conviction.  (Lodgment 8 at 11, 13, 16.)

Petitioner filed a petition for review in the California Supreme Court raising the same claims he raised before the state appellate court.  (See Lodgment 9; see also Lodgment 5.)  On August 11, 2021, the California Supreme Court summarily denied the petition.  (Lodgment 10.)

/ / /

/ / /

21cv1805-TWR(LR)

**B.      Petitioner's State Habeas Petitions**

Petitioner filed three habeas petitions in the San Diego County Superior Court.  On October 27, 2021, Petitioner filed his first petition for writ of habeas corpus, arguing that he was innocent of the attempted murder charge, the victim lied when he stated he did not speak English, that Petitioner wanted to be released based on the four-to-six year deal he had been offered before the trial, and that he wanted to "fight the child endangerment" charges.  (Lodgment 11; see also Lodgment 12 at 2.)  On December 28, 2021, the San Diego County Superior Court denied the petition.  (Lodgment 12.)

On February 28, 2022, Petitioner filed his second petition for writ of habeas corpus, arguing that trial court erred in finding him competent to stand trial, there was insufficient evidence to convict him, and the victim did not testify voluntarily.  (See Lodgment 13.)  On March 21, 2022, Petitioner filed his third petition for writ of habeas corpus, arguing that the trial court erred in finding him competent to stand trial and by not setting an additional competency hearing, and that there was insufficient evidence to support his attempted murder conviction.  (Lodgment 14.)  On April 14, 2022, in one order, the San Diego County Superior Court denied Petitioner's second and third petitions.  (Lodgment 15.)

**C.      Petitioner's Federal Habeas Petition**

On October 21, 2021, Petitioner filed his federal Petition in the United States District Court for the Southern District of California.  (ECF No. 1.)  In his operative pleading, the Fourth Amended Petition, Petitioner asserts the following claims: (1) the trial court erred in finding that he was competent to stand trial and in failing to order a second competency hearing, and (2) the evidence was insufficient to support his attempted murder conviction.  (See FAP at 5–10.)  On May 31, 2022, Respondent filed an Answer to Plaintiff's Second Amended Petition.  (ECF No. 23.)

On February 14, 2024, the Court issued an order directing Respondent to file a supplemental pleading and setting briefing schedule.  (ECF No. 50.)  On February 27, 2024, Respondent filed a document "ask[ing] this Court to construe [Respondent's]

Answer to the Second Amended Petition and Memorandum of Points and Authorities in Support thereof, filed on May 31, 2022," as Respondent's Answer to Petitioner's Fourth Amended Petition.  (ECF No. 51 at 2.)  On March 14, 2024, Petitioner filed his Traverse, and on March 22, 2024, his Supplemental Traverse.  (See ECF Nos. 56 & 58.)

### III.  SCOPE OF REVIEW

Petitioner's Fourth Amended Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 326 (1997).  Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Early v. Packer, 537 U.S. 3, 7–8 (2002).  In making this determination, a reviewing federal court must first identify the appropriate state court decision to review.  Where there is no reasoned decision from the state's highest court, the reviewing federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning."  Wilson v. Sellers, 584 U.S. 1188, 1192 (2018); see also Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991) (providing that a reviewing federal court may "look through" to the last reasoned state court decision).

A state court's decision is "contrary to" clearly established federal law if the state court (1) "applies a rule different from the governing law set forth in [United States Supreme Court] cases," or (2) "decides a case differently than [the United States Supreme

Court] has done on a set of materially indistinguishable facts." <u>See</u> 28 U.S.C.

§ 2254(d)(1); <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002); <u>Williams v. Taylor</u>, 529 U.S. 362,

405–06 (2000).  An "unreasonable application" of clearly established federal law occurs

where the state court "identifies the correct governing legal principle [from the United

States Supreme Court's decisions] but unreasonably applies that principle to the facts of

the prisoner's case." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (quoting <u>Williams</u>, 529

U.S. at 413).  "[A] federal habeas court may not issue [a] writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must

be objectively unreasonable." <u>Id.</u> at 75–76 (citations and internal quotation marks

omitted).  Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the United States Supreme] Court's decisions as of the time of the relevant state-court

decision." <u>Williams</u>, 529 U.S. at 412.

Habeas relief is also available where the state court's adjudication of a claim

"resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(2);

<u>see also</u> <u>Wood v. Allen</u>, 558 U.S. 290, 293 (2010).  A reviewing federal court will not

overturn a state court's decision on factual grounds unless the federal court finds that the

state court's factual determinations were objectively unreasonable in light of the evidence

presented in state court. <u>See</u> <u>Miller-El</u>, 537 U.S. at 340; <u>see also</u> <u>Rice v. Collins</u>, 546

U.S. 333, 341–42 (2006) (the fact that "[r]easonable minds reviewing the record might

disagree" does not render a decision objectively unreasonable).  This Court will presume

that the state court's factual findings are correct, and Petitioner may overcome that

presumption only by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Schriro</u>

<u>v. Landrigan</u>, 550 U.S. 465, 473–74 (2007).

/ / /

/ / /

/ / /

21cv1805-TWR(LR)

## IV.  DISCUSSION

**A.  <u>Habeas Relief is not Warranted with Respect to Petitioner's Claims that the Trial Court Erred in (1) Finding that Petitioner was Competent to Stand Trial and (2) Failing to Conduct a Second Competency Hearing at the Time of Sentencing</u>**

### 1.  The initial competency determination

Petitioner argues that the trial court erred in finding that he was competent to stand trial.  (FAC at 5–8.)  Specifically, he asserts that the trial court considered an expert's competency report from Dr. Matthew Carroll and erroneously found that Petitioner was competent.  (<u>Id.</u> at 6.)  Petitioner contends that Dr. Carroll's report contained "no evidence" that Petitioner "could have assisted in any way in his lawyer's defense of him." (<u>Id.</u>)  Petitioner cites his prior statement that "he knew he did not murder the man because he stabbed him in the shoulder," and argues that this "factually false" and "nonsensical" statement shows his dissociation from reality and inability to aid in his defense.  (<u>Id.</u> at 6–7 (citing <u>Drope v. Missouri</u>, 420 U.S. 162, 176 (1975).)

Respondent contends that the state court's rejection of Petitioner's claims related to competency was reasonable.  (Answer at 8–15.)  Respondent asserts that the state court outlined the trial proceedings, discussed the applicable state and federal legal standards, and found that Petitioner's assertions that he was incompetent to stand trial were unfounded, speculative, and contrary to the evidence in the record.  (<u>Id.</u> at 11–13.)  Respondent argues that Petitioner failed to establish that the state appellate court's rejection of this claim was contrary to or an unreasonable application of Supreme Court authority, and federal habeas relief is not warranted.  (<u>Id.</u> at 14–15.)

"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." <u>Medina v. California</u>, 505 U.S. 437, 439 (1992); <u>see also</u> <u>Pate v. Robinson</u>, 383 U.S. 375, 377 (1966) ("[T]he conviction of an accused person while he is legally incompetent to stand trial violates due process.").  To be competent to stand trial, a defendant must have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational

understanding," and a "rational as well as factual understanding of the proceedings against him."  Cooper v. Oklahoma, 517 U.S. 348, 354 (1996) (internal quotation marks and citation omitted); see also Drope, 420 U.S. at 171 (providing that to be competent to stand trial, a defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense").

In this case, the California Supreme Court summarily denied Petitioner's petition, (Lodgment 10), and this Court must therefore "look through" the silent denial to the California Court of Appeal's opinion, (Lodgment 8).  See Wilson, 584 U.S. at 1192; Ylst, 501 U.S. at 803–04.  The state appellate court found that the trial court did not err in finding that Petitioner was competent to stand trial.  (See Lodgment 8 at 3, 8–11.)  The California Court of Appeal initially summarized the relevant factual and procedural background, and the applicable legal principles as follows:

> After arraignment, defense counsel declared a doubt as to Riley's competency to stand trial.  The trial court suspended proceedings pursuant to section 1368, set a competency hearing, and appointed Dr. Matthew Carroll to conduct a competency evaluation of Riley.
>
> After evaluating Riley, Dr. Carroll concluded "with reasonable medical certainty, that although [Riley] appears to have a history of psychotic disorder, and clinically has a lower than average intellect, he does understand the nature of the proceedings against him, and he can assist his attorney in a rational manner in his own defense at this time."
>
> Upon reviewing Dr. Carroll's report, Riley asked the court to continue the competency hearing so he could obtain his own evaluation.  The court granted the continuance.  When the competency hearing was held, Riley's counsel informed the court that he "was able to consult with an independent doctor" and that he would "stipulate to the qualifications of [Dr. Carroll] and submit on those findings."
>
> Based on the parties' stipulation, the trial court received Dr. Carroll's report into evidence at the competency hearing.  Neither defense counsel nor the prosecutor offered any argument on the question of Riley's competence.  The court determined that Riley was mentally competent to stand trial and reinstated criminal proceedings.  After a two-day trial, the jury convicted Riley on all counts and the court set the matter for sentencing.
> . . . .

" ' "Both the due process clause of the Fourteenth Amendment . . . and state law prohibit the state from trying or convicting a criminal defendant while he or she is mentally incompetent." ' " (People v. Mai (2013) 57 Cal.4th 986, 1032 (Mai), quoting Drope v. Missouri (1975) 420 U.S. 162, 181; § 1367, subd. (a) ["A person shall not be tried or adjudged to punishment . . . while that person is mentally incompetent"].)  " ' "A defendant is incompetent to stand trial if he or she lacks ' "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding• [or lacks] . . . a rational as well as a factual understanding of the proceedings against him." ' " ' " (Mai, supra, 57 Cal.4th at p. 1032; § 1367, subd. (a)) ["A defendant is mentally incompetent . . . if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."].)  The law presumes the defendant competent unless he proves otherwise by a preponderance of the evidence. (§ 1369, subd. (f).)

(Id. at 3–6.)  The California Court of Appeal then analyzed, in relevant part, the trial court's determination that Petitioner was competent to stand trial, stating the following:

After evaluating Riley, Dr. Carroll concluded Riley understood the nature of the proceedings against him and could rationally assist his attorney in his own defense.  Upon receiving Dr. Carroll's psychiatric report, Riley consulted with his own independent doctor.  He then stipulated to Dr. Carroll's qualifications and submitted to Dr. Carroll's findings.  Thus, the sole evidence before the trial court at the competency hearing was Dr. Carroll's expert opinion that Riley was mentally competent to stand trial. That is substantial evidence to support the trial court's finding that Riley was competent.  (See People v. Leonard (2007) 40 Cal.4th 1370, 1391–1393 [holding one expert's testimony and report "provide[d] substantial evidence supporting the trial court's competency determination"].)

Although he submitted on Dr. Carroll's findings at the competency hearing, Riley now contends "there was no evidence" in Dr. Carroll's report "that [he] could have assisted in any way in his lawyer's defense of him."  The record does not support this argument.

Dr. Carroll's detailed observations and findings demonstrate ample support for his conclusion that Riley understood the nature of the proceedings against him and was able to rationally assist in his own defense. He observed that Riley was cooperative throughout the evaluation.  Riley

made eye contact with Dr. Carroll, "[h]is speech was of normal rate, rhythm, and volume," and "[h]is thought process was logical and goal directed."

Riley was able to provide information about his general background; educational, occupational, relationship, legal, and drug and alcohol history; and psychiatric history.  Riley knew he had been charged with murder[1][sic] but asserted that he did "not intend to murder the victim."  Riley expressed remorse multiple times during the evaluation, saying he was " 'sorry' " and " 'didn't mean for it to happen.' "

Dr. Carroll's report also included sufficient evidence that Riley understood the nature of his criminal proceedings.  He knew he had been arrested because he "stabbed a man," but he intended to plead not guilty to the charges.  Dr. Carroll indicated Riley understood the pleas of guilty and not guilty.  Riley knew he had a lawyer assigned to him, with whom he had met with "a few times."  Riley's understanding of the role of his attorney was to " 'fight on [his] behalf.  Speak to the judge and DA.' "  Riley indicated the judge would decide as to his guilt, but understood that "if the jury was present, they would make that decision."

Absent contradictory expert opinion or evidence that creates a reasonable doubt about his competence, on appeal, we reject Riley's request that we simply override Dr. Carroll's expert opinion.  (People v. Laudermilk (1967) 67 Cal.2d 272, 288 (Laudermilk).)  "We cannot by a process of fragmentizing the report or fastening attention to isolated parts of it, substitute other conclusions for the expert opinion of [the psychiatrist].  To do so would be not merely to defeat the purpose of expert opinion evidence but to discard such evidence for mere psychiatric speculation clearly outside our province."  (Ibid.)

Riley also contends that a comment he made to Dr. Carroll—"I know I didn't murder the man[,] [b]ecause I stabbed him in the shoulder"—was "nonsensical and factually false."[2]  He also claims the fact that he "had such a strong (and strange) opinion of a complete stranger was evidence that [he] was not in touch with reality and would not be able to assist in his defense."  But even as Riley concedes in his opening brief, "[u]nder the substantial evidence test, the defendant must show more than bizarre actions or

---

[1]  The Court notes that the state appellate court's reference to "murder" rather than "attempted murder" appears to be a typo, because Dr. Carroll's report, which the appellate court discussed in this section, stated that "[Petitioner] told [Dr. Carroll] he was charged with <u>attempted</u> murder."  (Lodgment 2 at 7; <u>see also</u> Lodgment 1 at 7–8, 10–11, 14–15 (listing charges for <u>attempted</u> murder).)

[2]  Riley stabbed the victim in the bicep, not the shoulder.

21cv1805-TWR(LR)

declarations" to demonstrate his inability to rationally assist in his defense.
(See Laudermilk, supra, 67 Cal.2d at p. 285.)

. . . .

We conclude substantial evidence supports the trial court's initial
determination that Riley was competent to stand trial.

(Id. at 8–11 (footnote in the original[3]).)

After Petitioner's counsel raised the issue of Petitioner's competency to stand trial,
the trial court suspended the proceedings, ordered a pretrial competency evaluation
pursuant to California Penal Code section 1368, and the evaluation occurred on
February 28, 2019.  (See Lodgment 1 at 129; Lodgment 2 at 5.)  Dr. Matthew Carroll, a
Staff Forensic Psychiatrist, completed a "Report on Mental Competency to Stand Trial."
(Lodgment 2 at 5–8.)  Dr. Carroll noted in the report that he had reviewed Petitioner's
District Attorney's file and jail psychiatric records, and interviewed Petitioner.  (Id. at 5.)
Dr. Carroll also summarized Petitioner's background, as well as educational,
occupational, relationship, legal, drug, alcohol, and psychiatric history.  (Id. at 6–7.)

Petitioner told Dr. Carroll that he was arrested because he "stabbed a man," that he
was charged with attempted murder, and added, "I know I didn't murder the man.
Because I stabbed him in the shoulder."  (Id. at 7.)  Petitioner further stated that he did
not know the victim, he "was having a hard day," and that the attack "was something that
should not have happened."  (Id.)  Dr. Carroll also noted that "multiple times during the
interview" Petitioner stated that he was sorry for what had happened and that "[he] did
not mean for it to happen."  (Id.)

Petitioner advised Dr. Carroll that he had been assigned a lawyer, and his lawyer's
role was to "fight on [Petitioner's] behalf" and "[s]peak to the judge and DA."  (Id.)  Dr.
Carroll also reported that Petitioner understood the pleas of guilty and not guilty, and
stated that he wanted to plead not guilty because he did not attempt to murder the victim.

---

[3]  The Court changed the numbering of the quoted footnote to maintain consecutive footnote numbering
in this Report and Recommendation.

(Id.)  Additionally, Petitioner advised Dr. Carroll that the judge would make a ruling and decide if Petitioner was guilty or not guilty; and if the jury was present, the jurors would make that decision.  (Id.)  Petitioner also told Dr. Carroll that he "understood that the judge want[ed] to charge him and push the case forward."  (Id.)

Dr. Carroll's mental status evaluation of Petitioner revealed that he was cooperative, had good eye contact, and his speech "was of normal rate, rhythm, and volume," his thought process was logical and goal directed, and he "was not hearing voices or seeing things that were not there."  (Id.)  Dr. Carroll further noted that Petitioner "clinically appeared to have a below average intellect, but not at the level of formal intellectual disability."  (Id.)  Petitioner told Dr. Carroll that he "did not think there was anything wrong with his thinking by noting that he had driven across the country four times by himself and that he had a passport and that he had flown on planes."  (Id.)

Dr. Carroll's diagnostic impression was "[p]sychotic disorder not otherwise specified."  (Id.)  Based on his evaluation of Petitioner, Dr. Carroll concluded that "although [Petitioner] appears to have a history of a psychotic disorder, and clinically has a lower than average intellect, he does understand the nature of the proceedings against him, and he can assist his attorney in a rational manner in his own defense at this time."  (Id. (emphasis added).)

Petitioner's competency hearing was initially scheduled for March 11, 2019, but it was continued so that Petitioner could obtain an "[i]ndependent evaluation."  (Lodgment 1 at 131.)  At the April 15, 2019 hearing, counsel for both parties, including defense counsel, stipulated to Dr. Carroll's qualifications and submitted to Dr. Carroll's findings.  (Id. at 132.)  Based on the evidence before it, the trial court found that Petitioner was mentally competent to stand trial.  (Id. (finding that "defendant is mentally competent to stand trial," and reinstating criminal proceedings); Lodgment 2 at 9 (containing the trial court's notes that "[a]fter examination and hearing, consideration of

testimony and written reports of the examiners, the [c]ourt finds the defendant mentally competent.".)

After an extensive evaluation of Petitioner, Dr. Carroll determined that Petitioner "underst[ood] the nature and object of the proceedings against him."  (See Lodgment 2 at 7; see also id. (containing Petitioner's statements to Dr. Carroll that he was arrested because he "stabbed a man," that he was charged with attempted murder, that the judge would make a ruling and decide if Petitioner was guilty or not guilty, and if the jury was present, the jurors would make that decision).)  Further, Dr. Carroll determined that Petitioner was able to "assist his attorney in a rational manner in his own defense."  (See id.; see also id. (containing Petitioner's statements to Dr. Carroll that he had a court-appointed lawyer whose role was to "fight on [Petitioner's] behalf" and "[s]peak to the judge and DA," that Petitioner understood the pleas of guilty and not guilty, and that he wanted to plead not guilty because he did not attempt to murder the victim).)  Notably, Petitioner requested and was given an opportunity to obtain a second independent evaluation of his competency to stand trial from a different physician of his choice, but eventually decided to stipulate to Dr. Carroll's qualifications and submit to his report. (See Lodgment 1 at 131–32; Lodgment 2 at 9.)

Dr. Carroll's detailed report and findings contained ample factual support for the trial court's determination that Petitioner was competent to stand trial.  Petitioner therefore has not established that the state court's rejection of his claim on appeal was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d); see also Early, 537 U.S. at 7–8; Williams, 529 U.S. at 412–13.  Accordingly, the Court **RECOMMENDS** that Petitioner's claim that the trial court erred in finding that he was competent to stand trial be **DENIED.**

/ / /

/ / /

/ / /

### 2. Petitioner's competence at the time of sentencing

Petitioner next asserts that substantial "new" evidence presented to the trial court warranted a second competency evaluation. (FAC at 5–8.) Specifically, Petitioner argues that the "new" evidence comprised of: (1) Dr. DeFrancesco's report that Petitioner suffered from an "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder"; (2) Petitioner's statement to the probation officer that he had "kids" and that he was not "responsible for" the victim's actions; and (3) the trial judge's comments at the sentencing hearing acknowledging Petitioner's mental illness. (See id. at 7–8.) Petitioner maintains that the trial court erred by not ordering a second competency hearing at the time of sentencing. (See id. at 5–8.)

Respondent contends that the state appellate court reasonably rejected Petitioner's claim that the trial court erred in not holding a second competency hearing at the time of Petitioner's sentencing. (Answer at 8–10, 12–15.) Respondent states that state court found that Dr. DeFrancesco's report did not call into question Petitioner's competence to stand trial; rather, the report was submitted to support a mitigated sentence. (Id. at 13–14 (citing Lodgment 8 at 11–13).) Respondent further asserts that the state court found that Petitioner's statements to the probation officer did not cast serious doubt on the trial court's initial competency evaluation. (Answer at 14 (citing Lodgment 8 at 13).) Respondent argues that Petitioner failed to establish that the state court's rejection of this claim was contrary to or an unreasonable application of Supreme Court authority, and federal habeas relief is not warranted. (Answer at 14–15.)

A trial judge is required to *sua sponte* conduct a competency hearing where the evidence before the trial court raises a "bona fide doubt" as to a defendant's competence to stand trial. Pate, 383 U.S. at 385. Since there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed[,] the question is a difficult one in which a wide range of manifestations and subtle nuances are implicated." Drope, 420 U.S. at 180. "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all

relevant in determining whether further inquiry is required."  Id.; see also United States v. Garza, 751 F.3d 1130, 1134 (9th Cir. 2014) ("Relevant evidence falls into three broad categories: medical history, the defendant's behavior in and out of court, and defense counsel's statements about the defendant's competency.").

The Ninth Circuit has stated the following in its recent decision with respect to evidence that may warrant a competency hearing after a prior determination on competence to stand trial:

> While the Supreme Court has never spoken on what evidence is required for a competency hearing after a prior determination on competence to stand trial, our case law is "persuasive" when evaluating whether a state court "unreasonabl[y] appli[ed]" Supreme Court precedent.  Davis, 384 at 638 (citation omitted).  We have previously declared a competency hearing is necessary after a prior determination on competence when the evidence before the trial court constitutes "substantial evidence" that "would have raised a bona fide doubt in a reasonable trial judge that [the defendant] was no longer able to 'consult with his lawyer with a reasonable degree of rational understanding.'"  Maxwell v. Roe, 606 F.3d 561, 576 (9th Cir. 2010) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).

Piggee v. Muniz, No. 22-55770, 2024 WL 770621, at *2 (9th Cir. Feb. 24, 2024); see also Clark v. Arnold, 769 F.3d 711, 729 (9th Cir. 2014) (citation omitted) (providing that the trial court's duty to conduct a competency hearing arises "if a reasonable judge would be expected to have a *bona fide* doubt as to the defendant's competence" supported by "substantial evidence of incompetence").  Courts may only consider the evidence that was before the trial judge in determining whether "the failure to conduct an inquiry rises to a constitutional violation."  Michaels v. Davis, 51 F.4th 904, 942 (9th Cir. 2022) (quoting McMurrey v. Ryan, 539 F.3d 1112, 1119 (9th Cir. 2008)).

The state appellate court in this case found that the trial court did not err by not ordering a second competency hearing at the time of Petitioner's sentencing because none of the categories of "new" evidence cited by Petitioner "taken together or separately— triggered the requirement for a new competency hearing."  (Lodgment 8 at 11.)  The

California Court of Appeal summarized relevant factual and procedural background, as well as applicable law, stating that:

> A probation officer interviewed Riley to prepare a probation and sentencing report.  The probation officer observed that Riley was "polite throughout the interview" and although "[i]t was slightly difficult to keep him on track, . . . he was able to answer most questions posed by the [probation officer], without venturing too far off topic."  Riley accepted responsibility for the attack, "but disagree[d] with his actions being labeled and charged as attempted murder."  He did not provide details on the attack "on the advice of his attorney," who was present at the interview.

> For the sentencing hearing, Riley submitted a statement in mitigation and a report from Dr. David DeFrancesco, whom defense counsel had hired to conduct an independent psychological evaluation of Riley.  The purpose of Dr. DeFrancesco's evaluation of Riley was "to assess [Riley] for a mental disorder and if found[, to] describe how it impacts [Riley's] functioning and to provide an opinion regarding his risk for future acts of violence."  Dr. DeFrancesco offered no opinion as to Riley's ability to understand the nature of the proceedings against him or to rationally assist his attorney in his own defense.

> At the sentencing hearing, defense counsel argued that Riley's mental illness was a mitigating factor warranting a reduced sentence but did not declare any doubt about Riley's competence.

> The trial court expressed sympathy for Riley's mental health issues but stated public safety was its priority.  The court noted that Riley had a "history of escalating violence," and there was "uncertainty of what's going to happen if Mr. Riley is in an unstructured environment."  The court sentenced Riley to a term of 15 years in prison.

> . . . .

> "Both federal due process and state law require a trial judge to suspend trial proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial."  (People v. Rogers (2006) 39 Cal.4th 826, 847 (Rogers).)  Accordingly, section 1368 provides that, "[i]f, during the pendency of an action and prior to judgment, . . . a doubt arises in the mind of the judge as to the mental competence of the defendant" (§ 1368, subd. (a)) or if defense counsel declares a doubt as to the defendant's mental competence (§ 1368, subd. (b)), the court shall order a competency hearing and suspend criminal proceedings until the defendant's mental competence has been determined (§ 1368, subd. (c)).

16

"Substantial evidence of incompetence exists when a qualified mental health expert who has examined the defendant states under oath, and ' " 'with particularity,' " ' a professional opinion that because of mental illness, the defendant is incapable of understanding the purpose or nature of the criminal proceedings against him, or of cooperating with counsel." (Mai, supra, 57 Cal.4th at pp. 1032–1033.)  "Evidence of incompetence may [also] emanate from [other] sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations." (Rogers, supra, 39 Cal.4th at p. 847.) " '[M]ore is required to raise a doubt than mere bizarre actions citation] or bizarre statements' " by the defendant.  (People v. Welch (1999) 20 Cal.4th 701, 742 (Welch).)

"On appeal, the reviewing court determines whether substantial evidence, viewed in the light most favorable to the verdict, supports the trial court's finding" as to defendant's competence during a competency hearing. (People v. Lawley (2002) 27 Cal.4th 102, 131, citing People v. Marshall (1997) 15 Cal.4th 1, 31.)  "By the same token, and absent a showing of 'incompetence' that is 'substantial' as a matter of law, the trial judge's decision not to order a competency hearing is entitled to great deference, because the trial court is in the best position to observe the defendant[.]" (Mai, supra, 57 Cal.4th at p. 1033 [" ' ' "An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper." ' ' "].)

The trial court's duty to conduct a competency hearing under section 1368 arises any time "prior to judgment" when substantial evidence of incompetency arises.  (§ 1368, subd. (a); People v. Jones (1991) 53 Cal.3d 1115, 1152–1153 (Jones).)  This duty is ongoing and continuous, even where there has already been a pretrial competency hearing.  (People v. Melissakis (1976) 56 Cal.App.3d 52, 62.)  "When a competency hearing has already been held and the defendant has been found competent to stand trial, however, a trial court need not suspend proceedings to conduct a second competency hearing unless it " 'is presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of that finding." (Jones, at p. 1153.)

We review a trial court's decision to not declare a doubt and not hold a competency hearing "for reasonableness by asking whether there was substantial evidence supporting a finding of incompetence." (People v. Hines (2020) 58 Cal.App.5th 583, 599.)  "If the defendant presented substantial evidence of incompetence, there is a bona fide doubt as to competence as a matter of law, and the trial judge must order (or be directed to order) a full competency hearing.  If the defendant has not presented

1
2
3

substantial evidence of incompetence, the decision of whether to order a full competency hearing lies within the discretion of the trial court (and we review the decision for abuse of discretion)."  (Ibid.)

4    (Id. at 4–8.)  The state appellate court then reasoned as follows:

5
6
7
8
9
10

Dr. DeFrancesco offered no opinion nor did he evaluate Riley for his ability to understand the nature of the proceedings or to rationally assist his attorney in his own defense.  The purpose of Dr. DeFrancesco's evaluation of Riley was "to assess [Riley] for a mental disorder and if found[, to] describe how it impacts [Riley's] functioning and to provide an opinion regarding his risk for future acts of violence."  Defense counsel argued Dr. DeFrancesco's report was [offered to] support for a mitigated sentence.  He did not, on the basis of Dr. DeFrancesco's report, declare a doubt as to Riley's competency at the sentencing hearing.

11
12
13
14
15
16
17

Moreover, Dr. DeFrancesco's report does not cast serious doubt on Dr. Carroll's opinion or the trial court's initial determination that Riley was competent.  He found Riley "oriented appropriately to person, place, time, and situation."  He noted that Riley spoke "quickly with a mild stutter," occasionally losing his train of thought.  Riley also had "disorganized speech where he was unable to share consistently his thoughts in a connected and linear manner."  Dr. DeFrancesco, however, estimated that Riley was in the "[a]verage range of functioning for all areas assessed," except that Riley was in the moderate impairment range for short-term memory and judgment and in the mild range of impairment for expressive language.

18
19
20
21
22
23

Dr. DeFrancesco diagnosed Riley as "appear[ing] to have some form of psychotic illness," specifically "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder."  But this is not new information or new evidence.  Dr. Carroll had made similar if not the same observations of Riley's mental illness.  Dr. Carroll noted that Riley's jail psychiatric records indicated prior diagnoses for psychotic and personality disorders.  He also noted that Riley denied hearing voices at the time of the offense and he observed that Riley was not hearing voices or experiencing hallucinations during his evaluation.

24
25
26
27
28

However, "evidence of mental illness alone is not sufficient to raise a doubt about a defendant's competence to stand trial."  (People v. Ghobrial (2018) 5 Cal.5th 250, 271.)  "The question is whether [Riley's] mental illness interfered with his ability to understand the nature and purpose of the criminal proceedings or to communicate with his counsel about his defense."  (Ibid.)  And here, Dr. DeFrancesco (and Dr. Carroll) did not opine "that because of [his] mental illness, the defendant is incapable of understanding

the purpose or nature of the criminal proceedings against him, or of cooperating with counsel." (Mai, supra, 57 Cal.4th at p. 1033.)  However, "[e]ven supposing" Riley had some form of mental illness, our review of the record—including his comments at sentencing—does not show that he lacked an understanding of the nature of the proceedings or the ability to assist in his defense. (People v. Koontz (2002) 27 Cal.4th 1041, 1064.)

We also dispose of the argument that Riley's odd statements to the probation officer cast serious doubt on the court's initial competency determination.  As we previously stated, " 'more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements' " by the defendant. (Welch, supra, 20 Cal.4th at p. 742.)

We conclude there was not a substantial change of circumstances or new evidence casting serious doubt on the validity of the trial court's initial determination that Riley was competent to stand trial.  Thus, the trial court was not required to suspend criminal proceedings at the time of sentencing to conduct a second competency evaluation and there was no abuse of discretion in its decision not to do so.

(Id. at 11–13.)

Before Petitioner's sentencing hearing, his counsel submitted a statement in support of a mitigated sentence with an attached report from Dr. DeFrancesco, a psychologist.  (See Lodgment 1 at 81–93.) Dr. DeFrancesco completed an independent psychological evaluation of Petitioner on December 31, 2018, and wrote a report summarizing his findings on January 2, 2019.  (Id. at 86.) He stated in the report that Petitioner's counsel had hired him to render opinions on whether Petitioner "suffer[ed] from a mental disorder," and if so, "how it might impact [Petitioner's] actions, especially his risk for future acts of violence."  (Id.)

Dr. DeFrancesco administered a Test of Nonverbal Intelligence, and conducted a Neurobehavioral Cognitive Status Examination, as well as clinical, biographical, and mental status examinations of Petitioner.  (Id.) He also summarized Petitioner's background information, academic, vocational, medical, substance abuse, mental health, and criminal history.  (Id. at 88–89.) Dr. DeFrancesco reported that Petitioner was "oriented appropriately to person, place, time, and situation," and his emotions "were at times inconsistent with the content of what was being discussed or with his nonverbal

expression." (Id. at 87.)  Petitioner denied having any mental problems or being treated for mental disorder, but stated that he was prescribed "Zyprexa" while in custody and that he did not regularly take his prescribed medication.  (Id.)  Dr. DeFrancesco also noted that Petitioner "did not appear to be a reliable historian in that his presentation was confusing," and he "had trouble answering questions with direct and relevant responses often adding unnecessary and unrelated details."  (Id. at 88.)  Dr. DeFrancesco also stated that Petitioner "did not believe he had a mental health disorder or required treatment for one."  (Id. at 89.)

After assessing Petitioner's cognitive and intellectual functions, Dr. DeFrancesco concluded that Petitioner "performed less than average on a nonverbal screening measure but d[id] not appear to be intellectually disabled."  (Id. at 91.)  He further opined that Petitioner's "short-term memory problems could relate to his lack of sustained focus," and his "poor judgement is likely a consequence of some mental process."  (Id.)  Dr. DeFrancesco determined that Petitioner "appears to have some form of psychotic illness," including "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder."  (Id.)

As discussed in detail above, Petitioner's trial counsel hired Dr. DeFrancesco to render opinions on whether Petitioner was suffering from a mental disorder and how the disorder might have affected Petitioner's "risk for future acts of violence."  (Id. at 86.)  Petitioner's counsel attached Dr. DeFrancesco's report as an exhibit to his "Statement in Mitigation" submitted to the trial court in support of a mitigated sentence.  (See id. at 81–93.)  At the sentencing hearing, Petitioner's counsel argued that his client's mental illness was a mitigating factor warranting a ten-year sentence, but the counsel did not raise any doubts as to Petitioner's competence.  (See Lodgment 3 at 506–07; see also Lodgment 1 at 81–84.)  Further, as noted by the state appellate court, Dr. DeFrancesco's report regarding Petitioner's mental illness was generally consistent with Dr. Carroll's observations.  (See Lodgment 1 at 86–93; Lodgment 2 at 5–8; Lodgment 8 at 12.)  Notably, Dr. DeFrancesco did not opine in his report that Petitioner was not able to understand the nature or object of the proceedings or assist his counsel in a rational

manner in his defense.  (See Lodgment 1 at 86–93.)  Based on the evidence before it, the

trial court reasonably concluded that Dr. DeFrancesco's report did not raise a *bona fide*

doubt with respect to Petitioner's competence at the time of sentencing.

Petitioner also cites February 13, 2020 "Adult Services Probation Officer's

Report" as "new" evidence of his alleged incompetence.  (FAC at 7 (citing Lodgment 1 at

94, 98).)  In the report, the probation officer reported the following:

> Regarding the instant offense, [Petitioner] stated, "I'm an obedient father.
> And obedient is kind of a harsh word.  On a 24 hour basis that's how I am
> with <u>my kids</u>.  I made a big mistake and it really hurts me to go through this.
> <u>I'm not responsible for this guy's actions</u>.  I would never get involved into
> any type of confrontation."

(Lodgment 1 at 98 (emphases added).)  Petitioner appears to argue that his statements to

the probation officer evidenced his lack of competence because he only had one child,

and because eyewitness testimony during his trial indicated that the victim did not do

anything to provoke the attack.  (See FAC & Traverse; see also Lodgment 5 at 19.)

The Court notes that the probation officer's report also contained the following

summary:

> [Petitioner] said he did commit the crime and did make the mistake.  He said
> he knew the [victim's grand]kids were there and made the choice.  He
> admitted to getting into a confrontation with the victim.  When asked what
> the confrontation was about, [he] said it was complicated.  He did not offer
> further details, on the advice of his attorney.

(Lodgment 1 at 98.)  Further, the probation officer noted that during the interview, "[i]t

was slightly difficult to keep [Petitioner] on track, but he was able to answer most

questions posed by the undersigned, without venturing too far off topic."  (Id.)

Additionally, the probation officer wrote in the report that Petitioner "accept[ed]

responsibility for what he did, but disagree[d] with his actions being labeled and charged

as attempted murder."  (Id.)  After reviewing the entire report, and based on the record

before it, the trial court reasonably concluded that Petitioner's statements to the probation

officer did not raise a *bona fide* doubt with respect to Petitioner's competence at the time of sentencing.

Additionally, Petitioner cites as "new" evidence indicating his lack of competence the trial judge's "acknowledgement" of Petitioner's mental illness.  (FAC at 8 (citing Lodgment 3 at 510–11).)  Specifically, Petitioner quotes the following statement made by the trial judge during the sentencing hearing:

> I'm impacted as well as sympathetic in terms of the mental health issues that were reflected not only in the presentence report by the probation officer but Dr. DeFrancesco's report.
> . . . .
> But trying to look at all the factors here, the degree of paranoia that seems to be expressed, the nature of the disorder that was kind of unspecific, and therefore, reading between the lines, very, very difficult to address and to resolve.  I have to look at public protection number one.

(Id.)

As noted above, "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required."  Drope, 420 U.S. at 180.  The trial court was provided Dr. Carroll's evaluation of Petitioner and Dr. Carroll's determination that Petitioner was competent to stand trial, and found that Petitioner was competent.  (See Lodgment 1 at 132; Lodgment 2 at 9.)  Neither Petitioner's counsel nor the prosecutor voiced a concern about Petitioner's competence after the trial court's initial competency determination.  Further, the trial judge observed Petitioner's conduct during and after his trial.  Most importantly, neither Dr. DeFrancesco's report nor the probation officer's report contained medical opinions or other evidence indicating that Petitioner did not understand the nature and object of the proceedings against him, or that Petitioner was not able to consult with his counsel and to assist in his defense.  (See Lodgment 1 at 86– 110.)  To the contrary, the reports indicated that Petitioner continued to understand the nature of the proceedings against him, followed his counsel's advice, and took steps to assist his counsel in obtaining a mitigated sentence.  Accordingly, the record at the time

of Petitioner's sentencing did not indicate a "substantial change of circumstances or new evidence" casting serious doubt on the validity of the trial court's prior finding that Petitioner was competent to stand trial.  The trial judge therefore reasonably determined that there was no *bona fide* doubt as to Petitioner's competence at the time of sentencing. See Gray v. Muniz, No. 20-16122, 2022 WL 17844167, at *1 (9th Cir. Dec. 22, 2022) (quoting People v. Weaver, 26 Cal. 4th 876, 954 (2001)) ("[A]trial judge who has previously found a defendant competent need not hold a second or subsequent competency hearing unless 'the evidence discloses a substantial change of circumstances or new evidence is presented casting serious doubt on the validity of the prior finding of the defendant's competence.'"); see also Clark, 769 F.3d at 729 (providing that the trial court's duty to conduct a competency hearing arises "if a reasonable judge would be expected to have a *bona fide* doubt as to the defendant's competence" supported by "substantial evidence of incompetence").

After reviewing the record, the California Court of Appeal reasonably concluded that the record supported the trial court's determination that even if Petitioner had some form of mental illness, he understood the nature of the proceedings and had the ability to assist in his defense.  (See Lodgment 8 at 3–13); see also Powell v. Shinn, 842 F. App'x 100, 103 (9th Cir. 2021) (quoting United States v. Neal, 776 F.3d 645, 655–56 (9th Cir. 2015)) (holding that the trial court's continued finding of competency and the state appellate court's decision affirming that finding was reasonable, where the record contained evidence of petitioner's mental illness, but petitioner had not established that there was a "causal connection between the [illness] and his inability to understand the proceedings."); Jones v. Cate, Case No.: 3:09-cv-1896 JM (MSB), 2020 WL 6150039, at *11 (S.D. Cal. Oct. 19, 2020) (concluding that "although the facts of the crime did suggest [that petitioner was] out of touch with reality," petitioner did not "lack[] the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.").  Petitioner, therefore, has not established that the state court's rejection of his claim on appeal was contrary to, or an

unreasonable application of, clearly established federal law.  <u>See</u> 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 412–13.  Further, Petitioner has not established that the state court's rejection of his claim was based on an unreasonable determination of the facts.  <u>See id.</u>  As a result, the Court **RECOMMENDS** that Petitioner's claim that the trial court erred by not conducting a second competency hearing at the time of Petitioner's sentencing be **DENIED**.

## B.  <u>Habeas Relief is not Warranted with Respect to Petitioner's Claim that there was Insufficient Evidence to Support his Attempted Murder Conviction</u>

Petitioner alleges that there was insufficient evidence of his specific intent to kill to support his conviction for attempted murder.  (FAP at 5, 9–10.)  Petitioner asserts that he did not know the victim, S.H., and "there was no history, recent or distant, to suggest that [he] had murderous intent" when he stabbed S.H.  (<u>Id.</u> at 10.)  Petitioner further contends that "[i]t is equally plausible to speculate that [he], due to his mental illness simply stabbed [S.H.] because of some delusion."  (<u>Id.</u>)  Petitioner also maintains that he did not have a motive to stab S.H., and argues that the "absence of any motive must be probative of no intent to kill."  (<u>Id.</u>)

Respondent argues that the state court's rejection of Petitioner's claim that there was insufficient evidence to support his attempted murder conviction was reasonable.  (Answer at 15–17.)  Respondent asserts that Petitioner asks the Court to impermissibly draw inferences different from the inferences drawn by the jury and to reweigh that evidence.  (<u>Id.</u> at 16.)  Respondent also maintains that in light of the "sharply limited nature of constitutional sufficiently review" and the application of the "additional layer of deference" required by AEDPA, the state appellate court's rejection of Petitioner's claim of insufficiency of the evidence was reasonable, and habeas relief should therefore be denied.  (<u>See id.</u> at 17.)

Because the California Supreme Court summarily denied Petitioner's petition (Lodgment 10), the Court must "look through" the silent denial to the California Court of Appeal's opinion (Lodgment 8).  <u>See Wilson</u>, 584 U.S. at 1192; <u>Ylst</u>, 501 U.S. at 803–04.

The California Court of Appeal found that substantial evidence supported Petitioner's attempted murder conviction.  (See Lodgment 8 at 13–16.)  Specifically, the state appellate court stated the following:

> Riley asserts there is insufficient evidence of his specific intent to kill to support a conviction for attempted murder.  We do not agree.
>
> In assessing this claim, we "review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [Riley] guilty beyond a reasonable doubt."  (People v. Rodriguez (1999) 20 Cal.4th 1, 11 (Rodriguez); accord People v. Zaragoza (2016) 1 Cal.5th 21, 44.)  We presume the evidence supports the jury's judgment.  (Rodriguez, at p. 11.)  And we also " ' "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' "  (People v. Smith (2005) 37 Cal.4th 733, 738–739 (Smith).)  " ' " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " ' "  (Rodriguez, at p. 11, citing People v. Stanley (1995) 10 Cal.4th 764, 792–793.)
>
> To convict Riley of attempted murder, the jury found he (1) made a direct but ineffectual act toward killing S.H. and (2) he intended to kill S.H. (Smith, supra, 37 Cal.4th at p. 739; CALCRIM No. 600.)  Intent to kill and express malice are the same thing for purposes of attempted murder.  (Smith, at p. 741.)  Express malice requires a showing that the defendant actually desired the intended result (i.e. death) or knew " ' " 'to a substantial certainty' " ' " that death would occur.  (Id. at p. 739.)  Evidence of motive, however, is not required to establish an intent to kill.  (Id. at pp. 740–741.)
>
> Intent to kill or express malice is often inferred from the defendant's acts and the circumstances of the crime.  (See People v. Lee (1987) 43 Cal.3d 666, 679.)  "Absent such direct evidence, the intent obviously must be derived from all the circumstances of the attempt, including the [defendant's] actions and words."  (People v. Lashley (1991) 1 Cal.App.4th 938, 945–946 (Lashley).)
>
> Here, Riley intentionally attacked an unarmed victim and stabbed him at least five times, in vulnerable areas of his body, including once in the face above his eye and twice in his upper chest.  Riley stopped the attack only when a witness yelled, "Hey, what are you doing?"  This alone is substantial evidence to support the jury's finding of Riley's intent to kill.  (See People v. Avila (2009) 46 Cal.4th 680, 701–702 (Avila) [evidence of defendant's

25

repeated attempts to stab the victim, who was unarmed and trapped, and his successful stabs to the victim's arm and leg, "alone is substantial evidence of defendant's intent to kill"]; People v. Gonzalez (2005) 126 Cal.App.4th 1539, 1552 (Gonzalez) [intent to kill demonstrated in part by evidence of unprovoked attack that rendered unarmed victim prone and defenseless as the defendant repeatedly stabbed him]; People v. Moore (2002) 96 Cal.App.4th 1105, 1114 [substantial evidence supported intent to kill where defendant stabbed victim in an "extremely vulnerable area of the body"].)

Riley, however, argues there could not be sufficient evidence of an intent to kill because the victim did not suffer serious enough injury. But "the degree of the resulting injury is not dispositive of defendant's intent. Indeed, a defendant may properly be convicted of attempted murder when no injury results." (Avila, supra, 46 Cal.4th at p. 702.) Moreover, the victim testified he covered his heart because Riley was aiming for his vital organs. That the victim was able to thwart fatal blows or the defendant may have had poor aim does not invalidate intent to kill. (Avila, at p. 702 [jury could reasonably infer the victim avoided further injury because of how he defended himself during the attack]; Gonzalez, supra, 126 Cal.App.4th at p. 1552 [fact that the defendant missed the victim's "heart and lungs was fortuitous rather than indicative of the absence of an intent to kill"]; Lashley, supra, 1 Cal.App.4th at p. 945 [where "victim may have escaped death" due to defendant's "poor marksmanship" does not invalidate intent to kill].)

Riley also contends the jury could not have found specific intent to kill S.H. because he did not know S.H. Riley states that "[a]side from possible delusion, there was no motive for [him] to have stabbed [S.H.]." Motive is not required to establish an intent to kill. (Smith, supra, 37 Cal.4th at pp. 740–741.) Moreover, Riley argued that he lacked motive to the jury and, therefore, the intent to kill. The jury rejected that argument. In sum, we conclude there was substantial evidence to support the jury's finding that Riley had the specific intent to kill S.H.

(Id.)

The clearly established federal law regarding sufficiency of the evidence claims is set forth in Jackson v. Virginia, 443 U.S. 307 (1979). See id.; Cavazos v. Smith, 565 U.S. 1, 7 (2011) (per curiam). Petitioner is entitled to federal habeas corpus relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. "The Jackson standard 'must be applied with explicit reference to the substantive elements of

the criminal offense as defined by state law.'" Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) (quoting Jackson, 443 U.S. at 324 n.16); see also Juan H. v. Allen, 408 F.3d 1262, 1275 (9th Cir. 2005) ("Although our sufficiency of the evidence review is grounded in the Fourteenth Amendment, we undertake the inquiry with reference to the elements of the criminal offense as set forth by state law.").

"Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). First, on direct appeal, a "reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Id. (citation omitted). Second, on habeas review, a federal court may overturn a state court decision rejecting a sufficiency of the evidence challenge "only if the state court decision was 'objectively unreasonable,'" but may not do so simply because the federal court disagrees with the state court. Id. (citation omitted).

"[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos, 565 U.S. at 2; see also Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (habeas courts must respect "the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict."). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.

Petitioner was convicted of attempted murder in violation of California Penal Code sections 664 and 187(a). (See Lodgment 1 at 70, 156.) The trial court instructed the jury on the elements of the crime as follows: (1) "[t]he defendant took at least one direct but ineffective step toward killing another person" and (2) "[t]he defendant intended to kill that person." (See id. at 60; Lodgment 3 at 311); see also CALCRIM No. 600. Petitioner argues that there was no sufficient evidence to support the finding as to the second

element of the crime of attempted murder—that he acted with the specific intent to kill S.H.  (See FAP at 5, 9–10.)

Pursuant to California law, attempted murder requires proof of a "specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing."  People v. Lee, 31 Cal. 4th 613, 623 (2003).  "[I]ntent to kill or express malice, the mental state required to convict a defendant of attempted murder, may in many cases be inferred from the defendant's acts and the circumstances of the crime."  People v. Smith, 37 Cal. 4th 733, 735–36 (2005).  "There is rarely direct evidence of a defendant's intent.  Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions."  Id. at 736 (citation omitted).

The record supports the state court finding that the jury was provided with sufficient evidence from which they could draw a reasonable inference that Petitioner intended to kill S.H.  During Petitioner's trial, S.H. testified that on the night of the attack, he was walking with his daughter, Neam, and her two small children in El Cajon. (Lodgment 3 at 156.)  Neam was pushing a stroller with her younger son, her older son was walking next to her, and S.H. was following them.  (Id. at 158.)  Neam testified that when she first saw Petitioner, he was about twenty-three feet away, and Petitioner did not have a knife in his hand.  (Id. at 179, 183–84.)  Neam also testified that shortly before the attack, she and her children were ahead of S.H. waiting for him to catch up.  (Id. at 184.) S.H. testified that when he saw Petitioner, he was about ten feet away, Petitioner looked at S.H., and started to quickly approach him with a knife in his hand with a blade pointing forward.  (Id. at 160–162.)  S.H. backed away, tripped, and fell down on his back.  (Id. at 160, 163–64.)

The evidence presented at trial also showed that Petitioner approached S.H. and repeatedly stabbed him—once in the face near the eye, twice in the chest, and twice in the arm.  (Id. at 164–67, 185–87, 171, 173, 191–92.)  S.H. testified that during the attack, Petitioner was aiming at his heart, but S.H. put his arm out to protect his heart and got stabbed twice in his arm.  (Id. at 164–65.)  S.H. further stated that while Petitioner was

stabbing him, he was on his back, moving his arm and twisting his body around to protect himself.  (Id. at 167–68, 170–71.)  S.H. also testified that if he did not protect his heart, Petitioner would have stabbed him in the heart.  (Id. at 178.)  Additionally, S.H.'s daughter Neam testified that during the attack, her father covered his heart with his arm.  (Id. at 187.)  She stated that her father "was trying to—he [wa]s trying to protect his— himself so he won't get stabbed in the organs that's going to kill him."  (Id.)

The record in this case shows that Petitioner attacked S.H., who was elderly and unarmed, and that Petitioner stabbed S.H. with a knife at least five times near S.H.'s vital organs.  (See id. at 151, 165–66, 175, 178, 186–87, 189, 203–04, 275–77.)  Photographs of S.H's injuries and medical records documenting his injuries after the attack were admitted as exhibits during Petitioner's trial.  (See id. at 139–40.)  A rational jury could have found that by repeatedly stabbing S.H. with a knife in vital areas of his body, Petitioner committed a "direct but ineffectual act toward accomplishing the intended killing."  See Lee, 31 Cal.4th at 623.  Further, based on the evidence produced by the prosecution during Petitioner's trial, and S.H's and Neam's testimony in particular, a rational jury could have inferred from the circumstances of the attack that Petitioner intended to kill S.H.  See Smith, 37 Cal.4th at 735–36.  Viewing the evidence in the light most favorable to the prosecution, the Court finds that there was sufficient evidence from which the jury could have reasonably concluded that Petitioner had the specific intent to kill S.H.  See Jackson, 443 U.S. at 319 ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.");  see also id. at 326 (stating that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

Although Petitioner alleges that he might have stabbed S.H. "because of some delusion," (FAC at 10), based on the evidence presented at trial, the jury drew a different, reasonable conclusion, and this Court is required to defer to that conclusion.  See

21cv1805-TWR(LR)

<u>Jackson</u>, 443 U.S. at 326.  Additionally, although Petitioner contends that he did not have a motive to stab S.H. and that the "absence of any motive must be probative of no intent to kill," (FAC at 10), the absence of motive and how it affected Petitioner's intent was the issue for the jury to determine, not the court.  <u>See</u> <u>Cavazos</u>, 565 U.S. at 2 ("[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."); <u>Smith</u>, 37 Cal. 4th at 740–41 (stating that although evidence of motive is "often probative of an intent to kill," motive is not required to establish an intent to kill).  In this case, Petitioner's trial counsel argued during his closing argument that Petitioner had no motive and no intent to kill S.H.  (<u>See</u> Lodgment 3 at 339, 342–43, 345–46.)  The jury rejected that argument by finding Petitioner guilty of attempted murder.  (<u>See</u> Lodgment 1 at 70, 156.)  The Court must "respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict."  <u>Walters</u>, 45 F.3d at 1358.

Accordingly, the Court concludes that the trial record contains sufficient evidence to support the jury's finding that Petitioner intended to kill S.H. and that Petitioner committed attempted murder.  <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); <u>People v. Avila</u>, 46 Cal. 4th 680, 701–02 (2009) (finding fact that the evidence showing that "defendant repeatedly attempted to stab . . . an unarmed and trapped victim, and succeeded in stabbing him in the arm and leg" was "substantial evidence of defendant's intent to kill"); <u>People v. Gonzalez</u>, 126 Cal. App. 4th 1539, 1552 (2005) (holding that "intent to kill was established by evidence of [defendant's] unprovoked attack that rendered the unarmed victim prone and defenseless as [defendant] repeatedly stabbed him with a shank"); <u>People v. Bolden</u>, 29 Cal. 4th 515, 561 (2002) (finding that "plunging the knife so deeply into . . . a vital area of the body of an apparently unsuspecting and defenseless victim" indicated defendant's intent to kill);

see also <u>Gutierrez v. Biter</u>, Case No. CV 14-6402-DMG (DFM), 2016 WL 5400385, at

*11, 13–15 (C.D. Cal. Mar. 16, 2016) (finding that there was substantial evidence of

petitioner's specific intent to kill, where the prosecution presented evidence during

petitioner's trial that the victims of the attack were unarmed and suffered multiple stab

wounds near vital organs, and where petitioner argued that there was insufficient

evidence to establish his specific intent to kill under California Penal Code section 664).

The Court concludes that there was sufficient evidence as required by due process

to support Petitioner's conviction for attempted murder, and that the state appellate

court's decision was not contrary to, nor an unreasonable application of, clearly

established federal law.  <u>See</u> 28 U.S.C. § 2254(d).  The Court therefore

**RECOMMENDS** that Petitioner's claim that there was insufficient evidence to support

his attempted murder conviction be **DENIED**.[4]

---

[4]  Although not entirely clear, Petitioner may be attempting to raise an additional claim in his
Traverse and Supplemental Traverse, which has not been presented in his Fourth Amended Petition, and
in any of his prior federal petitions.  Petitioner appears to argue that his trial counsel was ineffective for
not allowing Petitioner to testify at trial.  (<u>See</u> ECF No. 56 at 2 (stating that the jury "did not get [his]
testimony" and his "[t]rial counsel was ineffective for not understanding [his] side"); <u>id.</u> (stating that he
was convicted after the court "never receive[ed] [Petitioner's] testimony" and his attorney should have
offered his testimony); ECF No. 58 at 1 (stating that he did not testify at trial, and that he "did try to
speak . . . during [his] court and trial.").  To the extent Petitioner is attempting to allege that his trial
counsel was ineffective for not allowing him to testify during trial, Petitioner's claim fails for several
reasons.

"A Traverse is not the proper pleading to raise additional grounds for relief."  <u>Cacoperdo v.</u>
<u>Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994); <u>see also</u> <u>Collins v. Uribe</u>, 564 F. App'x 343, 343–44
(9th Cir. 2014) (quoting <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 930 n.4 (9th Cir. 2008)) ("Arguments
raised for the first time in petitioner's reply brief are deemed waived.").  "In order for the state to be
properly advised of additional claims, they should be presented in an amended petition, or . . . in a
statement of additional grounds."  <u>Cacoperdo</u>, 37 F.3d at 507.  Further, Petitioner was specifically
warned in this Court's March 7, 2022, Order directing a response that his Traverse must "not raise new
grounds for relief that were missing from the Petition.  <u>Grounds for relief withheld until the traverse will</u>
<u>not be considered.</u>"  (ECF No. 14 at 3–4 (emphasis added)).

Additionally, Petitioner did not present his ineffective assistance of counsel claim to the
California courts, and the claim is therefore unexhausted.  <u>See</u> 28 U.S.C. § 2254(b)(1)(A) ("An
application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a
State court shall not be granted unless it appears that the applicant has exhausted the remedies available
in the courts of the State."); <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (providing that exhaustion of a

1

2  _____

3  habeas petitioner's federal claims requires that they have been "fairly present[ed]" in each appropriate
   state court, including a state supreme court with powers of discretionary review).

4       Even if the Court were to consider this claim, the claim would still fail on the merits.  To prevail
   on a claim of ineffective assistance of counsel, Petitioner must establish that (1) his counsel's

5  performance was deficient, and (2) the deficient performance prejudiced the defense.  Strickland v.
   Washington, 466 U.S. 668, 687 (1984).  To establish deficient performance, Petitioner must show that

6  his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

7  defendant by the Sixth Amendment."  Id.  "[A] court must indulge a strong presumption that counsel's
   conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  To establish that

8  counsel's performance prejudiced the defense, Petitioner must show that "the decision reached would
   reasonably likely have been different absent the errors."  Id. at 696.  Petitioner must show both deficient

9  performance and prejudice to establish ineffective assistance of counsel.  Id. at 687, 697.

10      Petitioner does not specify what testimony he would have offered during trial.  (See ECF Nos. 56
   & 58.)  The Court has reviewed the record and notes that the trial judge had an extensive discussion with

11 Petitioner outside the presence of the jury regarding testifying at trial.  (Lodgment 3 at 287–94.)
   Petitioner's counsel advised the trial judge that Petitioner "ha[d] letters that he was hopping to read to

12 [the trial judge] and to . . . the jury directly."  (Id. at 289.)  The trial judge then stated the following:

13      [T]he only thing that I allow in terms of a statement from a witness or a defendant are

14      statements that are relevant to the charge.  It's not permissible for a witness or a
        defendant to talk to the jury about their background, about issues in their life, about

15      anything but the incident [at issue in this case].  Those would be the only questions that I
        would allow, and I would not allow you to read a letter to the jurors, tell the jurors about

16      your background.  We've established somewhat that you might be homeless.  You can
        say yes, I don't have a home right now.  But there really wouldn't be much else allowed

17      regarding your personal history, your circumstances, any duress you may have suffered
        on the street.

18      . . . .
        And all that I would allow your attorney to ask you are questions about that evening.  We

19      wouldn't be able to talk about eviction.  We wouldn't be able to talk about things that
        happened in your life previously.  We wouldn't be able to talk about the pressures you

20      were facing because they have no relevance to whether the stabbing occurred and
        whether it was premeditated.

21

22 (Id. at 289, 291.)  After further discussion and deliberation, Petitioner advised the judge that he would
   not testify at trial, and the judge then stated that:

23
        Mr. Riley, if you happen to be convicted of one of these counts or another one of the

24      counts, that's open season to learn about you, to get some idea of what was happening to
        you at that point in your life in terms of what should happen, but not in terms of whether

25      the crime occurred or not.  That's not relevant to whether the crime occurred or not.

26      . . . .
        Mr. Riley, the record is clear that you want to testify, to tell your story.  I tried to explain

27      to you that's not the purpose of taking the witness stand.  The purpose would be to
        answer questions regarding what happened that evening.  And you decided, based upon

28      what I have said and the advice that you have received from your attorney, that you will

                                        32

## V.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Fourth Amended Petition.

**IT IS ORDERED** that no later than **April 26, 2024**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **May 17, 2024**.  The parties are advised

---

go along with your attorney's advice, because he has a strategy to try to reduce the punishment that would occur if you were convicted.

(Id. at 293; see also id. at 290–92.)  Petitioner then confirmed that he decided not to testify at trial.  (Id. at 293–94.)  Defense formally rested the case without calling Petitioner to testify, and Petitioner did not voice any objections.  (See id. at 294.)

Petitioner has not established that his trial counsel prevented him from testifying.  The trial record in this case demonstrates that Petitioner was aware of his right to testify, made an informed decision not to testify after a lengthy discussion with his counsel and the trial judge outside the presence of the jury, and that Petitioner again affirmed his decision not to testify when defense counsel did not call him to the witness stand.  (See id. at 287–94); see also U.S. v. Gillenwater, 717 F.3d 1070, 1080 (9th Cir. 2013) ("[W]e can infer that a defendant has personally waived his right to testify when defense counsel elects not to call the defendant as a witness, and despite being present, the defendant takes no affirmative action to demonstrate his disagreement with his counsel's decision not to call him as a witness.").  Further, given the facts and circumstances of the attack discussed in detail in this Report and Recommendation, the Court cannot conclude that the trial counsel's recommendation that Petitioner not testify was unreasonable and deficient.

Additionally, Petitioner has not established prejudice.  The "story" that Petitioner initially contemplated presenting to the jury (as he and his counsel described it to the trial judge) did not appear to be relevant to the elements of the crimes Petitioner was charged with.  (See Lodgment 3 at 288–91.)  Even if Petitioner testified, in light of the evidence introduced during his trial, there is no reasonable probability that the result of the proceeding would have been different.  Accordingly, Petitioner fails to establish that his trial counsel's performance was deficient and that the alleged deficient performance prejudiced Petitioner's defense when he did not testify at trial.  See Strickland, 466 U.S. at 687.  Consequently, to the extent Petitioner is alleging that his trial counsel was ineffective for not allowing him to testify at trial, the Court **RECOMMENDS** that this claim be **DENIED**.  See id.; see also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

     **IT IS SO ORDERED**.

Dated:  March 29, 2024

_____

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge